NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3549
_____

UNITED STATES OF AMERICA

v.

TRAVIS THOMAS,
also known as Mush,
                            Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cr-00324-01)
District Judge:  Hon. Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2018

Before:  JORDAN, VANASKIE, and NYGAARD, *Circuit Judges*

(Filed: October 9, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Travis Thomas appeals his sentence after pleading guilty to drug-related charges. We will affirm.

## I.  BACKGROUND

### A.  Indictment And Guilty Plea

A grand jury in Newark, New Jersey, indicted Thomas on one count of conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846, and seven counts of distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.  The indictment also named two co-conspirators, Jason Wheeler, who was charged in six of the counts, and Sterling McCoy, who was charged in three of the counts.

Wheeler and McCoy each pled guilty to the conspiracy charge, pursuant to plea agreements with the government.  The Court sentenced Wheeler to 24 months of imprisonment to be followed by three years of supervised release, and it sentenced McCoy to 60 months imprisonment to be followed by five years of supervised release. Thomas, on the other hand, chose to proceed to trial.

The Court commenced jury selection for Thomas's trial.  But before it completed that task, Thomas had a change of heart; he pled guilty to all eight counts without a plea agreement.

## B.   Sentencing Hearing

A presentence report ("PSR") was prepared, and it recommended applying the career offender enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G." or "guidelines") § 4B1.1(b)(1). It identified two of Thomas's prior convictions as qualifying offenses: a conviction for aggravated assault with a deadly weapon and a conviction for distribution of a controlled dangerous substance, both under New Jersey law. But the PSR did not list the particular statutory subsections of Thomas's prior convictions.

With the career offender enhancement, the guidelines offense level was 37, but the PSR then applied a two-point reduction for acceptance of responsibility pursuant to guidelines § 3E1.1, leaving a total offense level of 35. The PSR recommended a criminal history category of VI, also because of the career offender enhancement. The resulting recommended guidelines imprisonment range for Thomas was 292 to 365 months.

Thomas opposed the suggested application of the career offender enhancement. Although he conceded that his controlled substance conviction was a qualifying offense, he objected to the PSR's classification of his conviction for aggravated assault with a deadly weapon as being categorically a crime of violence. He also objected to the PSR's failure to include an additional one-point reduction under § 3E1.1(b) for his acceptance of responsibility.

After considering the parties' arguments and submissions, the District Court concluded that the career offender enhancement applied to Thomas because "the conviction for aggravated assault with a deadly weapon ... is unequivocally an act of

3

violence[,]" especially given "the background and the factual information that is set forth in [the PSR.]" (App. at 358.) The Court provided no other analysis on that issue.

The District Court then heard arguments from Thomas and the government relating to the traditional sentencing factors under 18 U.S.C. § 3553(a). Over Thomas's objection, the Court permitted the government to play a jailhouse recording in which Thomas said that, after his time in prison, he would be "shaking and baking" again. (App. at 382.) The government argued that the quoted phrase meant "going out and continuing to sell drugs or continuing to engage in the other criminal activities with which he was involved." (App. at 382.)

After considering those arguments, the Court sentenced Thomas to 210 months of imprisonment, to be followed by eight years of supervised release, and imposed a special assessment of $800. It exercised its discretion to impose a sentence below the guidelines range and explained that the downward variance was warranted by Thomas's history, background, and various mental and emotional issues. The Court also commented that Wheeler and McCoy had received different sentences because their roles in the drug conspiracy were different than Thomas's and because their criminal histories were also different than his. It denied Thomas's request that it recommend mental health and drug addiction counseling during his incarceration, but it encouraged Thomas himself to ask for and seek those services from the Bureau of Prisons.

Thomas timely appealed.

4

## II. DISCUSSION[1]

Thomas raises four arguments concerning his sentence. As explained below, all of them are unpersuasive.[2]

### A. The District Court Correctly Sentenced Thomas Under The Guidelines' Career Offender Enhancement.

"Whether a conviction constitutes a crime of violence for purposes of the career offender [g]uideline is a question of law over which we exercise plenary review." *United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017) (alteration and citation omitted). The only conviction of Thomas's at issue in this appeal is the one under New Jersey law for aggravated assault with a deadly weapon.[3]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[2] Thomas also raises an issue that we decline to consider. He argues that the Court violated his Fifth Amendment right to due process by not holding an evidentiary hearing regarding property that was seized from him or by not requiring the government to return that property. Citing *United States v. Chambers*, 192 F.3d 374 (3d Cir. 1999), he argues that seized property must be returned once criminal proceedings have concluded. Federal Rule of Criminal Procedure 41(g) permits a criminal defendant to move for the return of property by filing a motion in the district where the property was seized. Although Thomas mentioned to the District Court at his sentencing hearing that there was jewelry of his still in the government's possession, we have not seen in the record any evidence that he filed the motion allowed by Rule 41(g). We decline to consider now an issue that should be decided by the District Court in the first instance, if a decision is required at all. We trust that the government understands its obligations and will return the property in question promptly or seek its forfeiture, if that step is warranted.

[3] Again, Thomas conceded that his other predicate conviction, the one for distribution of a controlled dangerous substance, was a qualifying offense under the guidelines.

Thomas argues that the District Court erred by sentencing him as a career offender without analyzing whether that conviction was categorically a crime of violence, pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). In response, the government acknowledges that copies of the judgment orders related to his predicate convictions were not included in the parties' sentencing submissions. It has, however, provided them to us on appeal and argues that they show Thomas was convicted of third degree aggravated assault with a deadly weapon under N.J.S.A. § 2C:12-1(b)(2).[4] The government then contends that N.J.S.A. § 2C:12-1(b)(2) is categorically a crime of violence under the modified categorical approach. Thomas does not contest the validity of those documents but, in his reply brief, he argues that the District Court's decision to apply the enhancement should be reversed.

We may consider evidence outside of the record before the District Court when "it would be pointless to remand the case simply to have the District Judge take notice of that which we may notice ourselves." *United States v. Remoi*, 404 F.3d 789, 793 n.1 (3d Cir. 2005). We therefore take judicial notice of the court records of Thomas's prior conviction because it does not leave any "reasonable dispute" as to the statute under which Thomas was convicted.[5] Fed. R. Evid. 201(b).

---

[4] That provision makes one "guilty of aggravated assault if he ... [a]ttempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon[.]" N.J.S.A. § 2C:12-1(b)(2).

[5] Our decision to take judicial notice of those records should not, however, be taken as license for the government to ignore the need to make an appropriate record at sentencing.

Although we agree with Thomas that it was error for the District Court to have strayed from the categorical approach when analyzing his conviction,[6] that error was harmless because, as stated in our recent precedential opinion in *United States v. Abdullah*, --- F.3d ---, No. 18-1082, 2018 WL 4702225 (3d Cir. Oct. 2, 2018), a conviction under N.J.S.A. § 2C:12-1(b)(2) is categorically a crime of violence.[7] *Id.* at \*6. We reasoned that § 2C:12-1(b) is divisible, *id.* at \*3-\*4, that the defendant in that case was convicted of subsection (2) of that provision, *id.* at \*4, and that that subsection necessarily requires the government to prove "the use, attempted use, or threatened use of physical force against the person of another[,]" as required by the elements clause of the guideline's definition of crime of violence, *id.* (citation omitted). Thus, a prior conviction under N.J.S.A. § 2C:12-1(b)(2) categorically qualifies as a crime of violence. *Id.* at \*5.

Thomas therefore has at least two prior offenses that qualify him as a career offender. The District Court was correct to sentence him as such under § 4B1.1 of the guidelines.

---

[6] The District Court should not have considered the factual underpinnings of the conviction. *See United States v. Abdullah*, --- F.3d ---, No. 18-1082, 2018 WL 4702225 (3d Cir. Oct. 2, 2018) at \*3 ("Under the categorical approach, we must ignore the actual manner in which the defendant committed the prior offense and presume that the defendant did so by engaging in no more than the minimum conduct criminalized by the state statute." (internal quotation marks and citation omitted)).

[7] Although we analyzed the 2015 version of the statute in *Abdullah*, the statute in effect at the time of Thomas's conviction was the 2011 version of N.J.S.A. § 2C:12-1(b)(2). The 2011 version is identical in all material respects for purposes of this case to the 2015 version. *Compare* N.J.S.A. § 2C:12-1(b) (2011), *with id.* § 2C:12-1(b) (2015).

**B.    The Court Was Correct Not To Apply An Additional One-Point Reduction Pursuant To Guidelines § 3E1.1(b).**

Thomas next argues that he was entitled to an additional one-point reduction for his acceptance of responsibility pursuant to guidelines § 3E1.1(b) when he pled guilty. With respect to § 3E1.1, we review legal conclusions *de novo* and factual findings for clear error. *United States v. Williams*, 344 F.3d 365, 379 (3d Cir. 2003).

Section 3E1.1(b) permits the government to move for an additional one-point reduction to the offense level when the defendant has assisted the government by timely notifying the authorities of his intention to plead guilty. U.S.S.G. § 3E1.1(b). District courts are without authority to grant that adjustment in the absence of a motion from the government, and there is no bad faith exception to that rule when "the government has not committed itself in a plea agreement to file such a motion." *United States v. Drennon*, 516 F.3d 160, 162 (3d Cir. 2008).

Here, the government did not move for an additional one-point reduction, so that point was unavailable to Thomas. Indeed, the government was justified in not making such a motion because Thomas pled guilty after jury selection had commenced and on the eve of trial. He has not and cannot allege bad faith on the part of the government because he had no agreement with it. Thus, the Court was correct not to apply that additional one-point reduction.

**C.    The Court Did Not Err In Permitting The Government To Play A Jailhouse Recording At The Sentencing Hearing.**

Thomas next argues that the Court erred at the sentencing hearing when it allowed the government to play a jailhouse recording of one of his conversations. Sentencing

8

judges have wide discretion in the kinds and sources of information they may consider at sentencing, *United States v. Leekins*, 493 F.3d 143, 151 (3d Cir. 2007), provided that the information has "sufficient indicia of reliability to support its probable accuracy[,]" *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (citation omitted). Thomas does not contest the authenticity of the recording, and he cites no legal authority for the proposition that it was improper for the District Court to have considered what he said after his conviction and while he was imprisoned. We therefore conclude that the Court was well within its discretion to allow the government to play the recording.

**D.  Thomas's Sentence Is Procedurally And Substantively Reasonable.**

Finally, Thomas argues that his sentence of 210 months imprisonment is procedurally and substantively unreasonable. He says that the District Court failed to adequately consider the § 3553(a) sentencing factors and that, consequently, his sentence is "far greater than necessary." (Opening Br. at 1.) In particular, he emphasizes that his sentence is greater than those that Sterling and McCoy received for engaging in the same conspiracy. We review procedural and substantive reasonableness of a sentence for an abuse of discretion. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008).

As to procedural reasonableness, Thomas points to no specific procedural error, and our review of the record reveals none. Based on the sentencing hearing transcript, it is apparent that the Court adequately considered the § 3553(a) sentencing factors. It discussed Thomas's role in the offenses that he pled guilty to, his individual background and history, his family's support for him, the seriousness of the offenses, the need to promote respect for the law, to protect the community, and to provide deterrence to

9

Thomas and others. In short, the Court did what needed to be done, and Thomas has not shown otherwise.

That procedurally sound approach produced a substantively reasonable sentence. A sentence is substantively reasonable "[a]s long as [it] falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors[.]" *Wise*, 515 F.3d at 218. We will reverse a sentence only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Jackson*, 862 F.3d 365, 394 (3d Cir. 2017) (internal quotation marks and citation omitted). And we defer to a "district court's decision that the § 3553(a) factors, on a whole, justify the extent of [a] variance." *United States v. Ciavarella*, 716 F.3d 705, 736 (3d Cir. 2013).

The Court exercised its discretion here by varying downward and imposing a sentence that was 82 months less than the bottom of Thomas's guideline range. That choice was not an abuse of discretion, given the Court's consideration of Thomas's history, background, and various mental and emotional issues. Although Thomas received a sentence that was greater than those of his co-conspirators, that was because, as the Court explained, his role in the conspiracy and his criminal history were different than theirs. That the District Court did not recommend mental health and drug addiction counseling for Thomas during his incarceration but instead left it to him to seek those services from the Bureau of Prisons does not change the reasonableness of the sentence. Although Thomas may disagree with the sentence he received, it was not substantively unreasonable.

**III. CONCLUSION**

For the foregoing reasons, we will affirm.